IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Shaun B.,** : | |
| **Plaintiff,** : | |
| | Case No. 2:22-cv-02442-TPK |
| vs. : | |
| : | **Magistrate Judge Kemp** |
| **Commissioner of** | |
| **Social Security,** : | |
| **Defendant.** : | |

### OPINION AND ORDER

Plaintiff filed this action seeking review of a final decision of the Commissioner of Social Security. That decision, issued by the Appeals Council on April 6, 2022, denied his application for social security disability benefits. Plaintiff filed a statement of errors on October 12, 2022 (Doc. 13) to which the Commissioner responded on November 21, 2022 (Doc. 15). For the following reasons, the Court will **OVERRULE** Plaintiff's statement of errors and **DIRECT** the entry of judgment in favor of the Defendant.

### I. INTRODUCTION

Plaintiff filed his application on October 28, 2019, alleging that he became disabled on September 17, 2019. After administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on February 26, 2021. Plaintiff and a vocational expert, Diamond Warren, testified at the hearing.

In a decision dated March 15, 2021, the ALJ determined that Plaintiff was not entitled to benefits. She first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023, and that he had not engaged in substantial gainful activity since the alleged onset date. The ALJ next concluded that Plaintiff suffered from severe impairments including degenerative disc disease, fracture of the left hip and pelvis, status-post surgery on the left hip, and obesity. However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that, during the relevant time period, Plaintiff could perform a reduced range of light work. He could stand and walk for four hours in an eight-hour workday, sit for six hours, occasionally climb ramps and stairs (but never ropes, ladders, or scaffolds), occasionally stoop, kneel, crouch, and crawl, and frequently balance. Finally, he had to avoid all exposure to hazards including moving

machinery, heavy machinery, and unprotected heights.

Moving on with the process, the ALJ determined that with these limitations, Plaintiff could not, based on testimony given by the vocational expert, perform his past relevant work as a shuttle driver, assembler, dietary aide, or group home worker. However, the ALJ found that there were still light, unskilled jobs he could do, including mail clerk, office helper, and storage rental clerk, and that these jobs existed in substantial numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In his statement of errors, Plaintiff raises two arguments. He contends (1) that the ALJ improperly discounted his subjective report of symptoms; and (2) that the ALJ did not properly assess the opinion evidence or develop the record with respect to medical opinions.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020)**,**

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

> The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III. FACTUAL BACKGROUND

#### A. Hearing Testimony

Plaintiff, who was 40 years old at the time of the administrative hearing, testified, first, that he had last worked between eight months and a year before. At various times, he had driven a shuttle bus, worked as a funeral attendant, worked on an assembly line, and served as a dietary aide at a nursing home. He had also been a supervisor at a juvenile detention facility. He stopped working altogether due to a bad back which caused constant daily pain. Plaintiff said he had pursued various avenues of treatment but nothing seemed to help.

When asked about the limitations arising from his back condition, Plaintiff said that he could not sit for long periods of time, nor could he stand, sit, or walk for more than thirty minutes. He used a cane every day. He had also suffered a broken hip and knee in a car accident and had two surgeries on his hip (but not a hip replacement). He needed help with personal care and did no household chores. Plaintiff said that he stayed home every day unless he had to go to medical appointments.

The vocational expert, Ms. Warren, first classified all of Plaintiff's past jobs as either light or medium in exertional level. She was then asked questions about a person with Plaintiff's vocational profile who was limited to light work with certain postural and environmental restrictions. She said that such a person could do several of Plaintiff's past jobs. If the person were limited to standing and walking only four hours per day, however, those jobs would not be available. Ms. Warren testified, however, that there would be other jobs such a person could do, such as mail clerk, office helper, and storage rental clerk, and she provided numbers for such jobs as they exist in the national economy. She also said that if the person were restricted to sedentary work and needed some version of a sit/stand option, he or she could do jobs such as document preparer, porter, and final assembler. Being off task for 15% of the work day was work-preclusive, however, as was missing two days of work per month.

#### B. Relevant Medical Records

As early as 2014, when he was 33 years old, Plaintiff had been diagnosed with mild degenerative disc disease, which apparently resulted from a 2011 work injury. An MRI done in 2014 showed thecal sac narrowing at L4-5 as well as bilateral facet arthropathy and a small disc protrusion at L5-S1. In 2015, he had an epidural steroid injection after other treatment methods provided little relief. In 2019, he also developed right shoulder pain after lifting a suitcase at work. He was still having back pain made worse by prolonged standing, and he had been taking medication since the 2015 injection, including Percocet and gabapentin. At an examination done three days after he stopped working, he demonstrated pain in the back on palpation and had decreased range of motion.

In October, 2020, Plaintiff was hospitalized for ten days following a motor vehicle

accident. He had hip surgery on October 5, 2020 and again on October 9, 2020, and was also diagnosed with a fracture of the patella. After discharge, he was referred to occupational therapy. He was treated for left foot pain in November and December, 2020. A note from November, 2020, showed that he walked with a normal gait, although records from seveeral 2019 examinations done by Nurse Practitioner Ingersoll indicate that he walked with a limp and was using a cane for assistance.

### C. Opinion Evidence

Rebecca Ingersoll, the certified nurse practitioner who saw Plaintiff in 2019, completed a form on January 14, 2020, indicating that due to his back problems, Plaintiff would need to lie down multiple times in an eight-hour workday, could walk or stand for only an hour, could not lift as much as twenty pounds, was restricted in the use of his arms for reaching, and would miss work more than four times a month. (Tr. 479-80).

Dr. Crennan, a state agency physician, reviewed the records and, in an opinion dated February 19, 2020, concluded that Plaintiff could perform the lifting, standing, and walking requirements of light work but had some postural limitations. (Tr. 54-56). Dr. Das, a second state agency reviewer, concurred with that assessment, and also determined that Ms. Ingersoll's opinion that Plaintiff had various disabling symptoms was not supported by clinical evidence. (Tr. 61-63).

### IV. DISCUSSION

### A. Self-Reported Symptoms

In his first claim of error, Plaintiff argues that the reasons given by the ALJ for finding, as she did, that Plaintiff's subjective descriptions of his symptoms was not entirely consistent with the evidence, are flawed. This claim requires a close analysis of the reasoning provided by the ALJ for her finding.

The ALJ first summarized what Plaintiff had to say about his limitations, noting that he said that his lower back injury prevented him from working and that the Percocet which had been prescribed did not provide much relief. He also testified that the 2020 automobile accident made his back worse. In concluding that these complaints did not support total disability, the ALJ pointed out that "[u]biquitously noted was the claimant's history and current misuse of opiate medications calling into question to [sic] supportability of the claimant's subjectively reported pain." (Tr. 22). She also relied on the fact that "despite orders to establish with pain management, for evaluation for opiate use for pain, the record does not show that the claimant ever established with such a provider during the period." *Id*. Further, she noted that nothing in the record indicated that his use of a cane was medically necessary or that any provider had prescribed a cane; that he was walking normally in November, 2020; and that there did not appear to be any functional limitations arising from his fractured kneecap. *Id*. These conclusions led her to find that he could do a limited range of light work.

Plaintiff's statement of errors interprets the evidence about opiate use in a different way. He argues that some of the alleged noncompliance related to his not taking his medication on occasion, thus resulting in a negative test for opiates, and that other notations of noncompliance were merely suspicions, none of which resulted in the discontinuance of his medication. He also asserts that there may have been valid reasons why he did not more aggressively seek out other treatment for his back, although he appears to concede that these reasons do not directly appear in the record. Finally, he argues that evidence about his use of a cane is not really relevant to the problems caused by his back and that it stands to reason that no provider would have ordered a cane when he was already using one. The Commissioner's response summarizes in detail the evidence that supports the ALJ's interpretation of the record and relies on case law holding that an ALJ has broad discretion when it comes to making this type of determination.

The Court is guided in its determination of Plaintiff's claim of error by this statement from *Gursky v. Colvin*, 2017 WL 6493149, at *8 (W.D. Tenn. Dec. 19, 2017):

> The Sixth Circuit has "held that an administrative law judge's credibility findings are virtually unchallengeable" absent compelling reasons. *Shepard v. Comm'r of Soc. Sec.*, No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (*quoting Ritchie v. Comm'r of Soc. Sec.,* 540 Fed.Appx. 508, 511 (6th Cir. 2013)). Those compelling reasons appear when ALJs' credibility determinations are not "supported by substantial evidence."

It is certainly true that "[a]n ALJ is not required to accept a claimant's subjective symptom complaints ... and may properly discount the claimant's testimony about her symptoms when it is inconsistent with objective medical and other evidence." *Avery v. Comm'r of Soc. Sec.*, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). However, as stated in *Davis v. Comm'r of Soc. Sec.*, 2017 WL 1044773, at *8 (S.D. Ohio Mar. 20, 2017), *report and recommendation adopted*, 2017 WL 4221459 (S.D. Ohio Sept. 21, 2017),

> [a]lthough the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. *See, e.g. Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

Finally, SSR 16-3p provides that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." It is worthwhile noting that SSR 16-3p no longer uses the term "credibility" in this context, but focuses on the extent to which the claimant's testimony is consistent with, or in conflict with, the other evidence of record.

Here, the Court does not find Plaintiff's argument persuasive. A reasonable person could

conclude from this record, as the ALJ did, that even Plaintiff's health care providers raised questions about the consistency of his reports of disabling pain and about his opiate medication use. Additionally, it is pure speculation, on this record, to conclude that Plaintiff had otherwise valid reasons for not seeking out pain management care as recommended; the fact remains that he did not do so. There are also, as the Commissioner points out, differences between what Plaintiff was reporting and the objective findings made when he was examined; the ALJ noted this discrepancy as well, stating that the physical examinations done in 2020 "noted an obese body habitus ... but [were] otherwise completely unremarkable." (Tr. 21). All of these are legitimate factors for discounting, to some extent, a claimant's self-report of severe symptoms. Given the broad leeway granted to an ALJ in making this determination, and given that the ALJ relied on matters which find support in the record, the Court finds that this claim provides no basis for disturbing the ALJ's finding or for ordering a remand for further consideration of this issue.

### B. Opinion Evidence

Plaintiff's second claim of error takes issue with the way in which the ALJ evaluated the opinion evidence. He notes that the ALJ found all three sets of opinions - from Nurse Practitioner Ingersoll and from the two state agency reviewers - to be unpersuasive, and also that the automobile accident post-dated all of the opinions, thus rendering any reliance on them to be unreasonable. He further contends that the ALJ did not properly determine that Nurse Ingersoll's opinion was unsupported because the decision focused only on the evaluation form itself and not the underlying treatment notes. The Commissioner responds that Plaintiff is simply inviting the Court to reweigh the evidence and that nothing about the automobile accident and its impact on Plaintiff's functioning called into question the accuracy of the prior opinions.

The ALJ had this to say about the medical opinions. First, as to Nurse Ingersoll, the ALJ reasoned that

> [t]he undersigned has found this assessment unpersuasive. The undersigned notes that at no time did Nurse Ingersoll identify any specific treatment or evaluative evidence to substantiate any of the limitations assessed. Furthermore, her opinions are radically divergent from the other opinions of record, which evaluated a greater body of evidence prior to the claimant's October 2020 accident. For these reasons, the undersigned cannot place greater reliance on this statement.

(Tr. 23). As far as the state agency physician's opinions were concerned, the ALJ said that

> [t]he undersigned has found these assessments unpersuasive. Consistent with the claimant's acute injuries after the State agencies respective assessments, and postoperative recovery period, the undersigned has further reduced the claimant's residual functional capacity to a reduced range of light exertion, with an allowance for 4 hours standing and walking during an 8 hour workday, in addition to postural and environmental limitations to further mitigate potentials for

>symptoms exacerbation.

*Id*.

Plaintiff appears to be making two separate arguments about why this analysis is incorrect. One of those arguments is that the residual functional capacity finding, because it does not track any of the medical opinion evidence and because those opinions were all rendered prior to additional developments in the record, must have been the product of the ALJ's lay evaluation of the raw medical data. And, as this Court has said, "[a]s ALJs are not qualified to interpret raw medical data, a RFC determination must be supported by medical opinions in the record." *Dillman v. Comm'r of Soc. Sec.*, 990 F. Supp. 2d 787, 795 (S.D. Ohio 2013)**.**

This argument is not persuasive in the context of this record. Both state agency reviewers thought that Plaintiff could perform a relatively full range of light work activities. The ALJ, finding that those opinions were both too optimistic and that they did not take into account Plaintiff's later hospitalization and hip surgery, opted for a more restrictive RFC that accommodated additional limitations. That is a judgment that the ALJ was entitled to make. As explained in *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017),

> the social security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion. For example, ... 20 C.F.R. § 404.1527(d) provides that the final responsibility for deciding issues such as the claimant's residual functional capacity is reserved to the Commissioner. However, [case law] also do[es] not require the ALJ to entirely base his or her RFC finding on the opinion of a physician—they require the ALJ's RFC assessment be supported by substantial evidence and not merely on the ALJ's own medical interpretation of the record.

Here, the evidence relied on by the ALJ to reduce Plaintiff's functional capacity beyond that described by the state agency reviewers is, as the Court in *Chamberlin v. Comm'r of Soc. Sec.*, 2020 WL 2300240, at *3 (E.D. Mich. May 8, 2020) described it, "not complicated diagnostic and/or highly-specialized medical data that requires professional training to interpret." It consisted mainly of Plaintiff's own testimony about his limitations and the records following his hospitalization showing mainly normal findings concerning the effect of his broken kneecap and hip surgery. Consequently, the ALJ did not err in giving this evidence some credence and adding limitations to those contained in the state agency opinions.

The other portion of Plaintiff's argument is directed to the ALJ's decision to give little weight to the opinion of Nurse Practitioner Ingersoll. As this Court has noted, explaining how such claims are currently analyzed under the regulations currently in effect, which specify five separate factors to be used by an ALJ in evaluating medical opinions, because

> two factors–supportability and consistency–are the "most important" ones, the ALJ "will explain" how he or she considered them. 20 C.F.R. § 416.920c(b)(2)

> (emphasis added).  As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 416.920c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 416.920c(c)(2).

*Wilson C. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4244215, at *6 (S.D. Ohio Sept. 15, 2022).

Here, although the ALJ's discussion of Nurse Ingersoll's opinion is brief, it adequately addresses these two key factors, finding that the record did not support the opinion and that it was not consistent with other evidence, particularly the opinions expressed by the two state agency reviewers.  Plaintiff has also claimed that the ALJ improperly limited her discussion of supportability to the evidence cited in the form completed by Nurse Ingersoll, but, taking the ALJ's decision as a whole, the ALJ also discussed how the objective evidence did not support the types of extreme limitations set forth in Nurse Ingersoll's opinion.  Further, the second state agency opinion, which, as the ALJ acknowledged, is inconsistent with Nurse Ingersoll's opinion, states that there is no clinical support in the records for the restrictions expressed by Nurse Ingersoll.  Overall, the Court finds no error in the way in which the ALJ evaluated the medical opinion evidence, and thus no basis for overturning her decision.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **OVERRULES** Plaintiff's statement of errors (Doc. 13) and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

/s/ Terence P. Kemp
**Terence P. Kemp**
**United States Magistrate Judge**